Case number 24-1550, Deanna Johnson v. Ford Motor Company. Oral argument not to exceed 15 minutes per side. Carol Lobbaum for the appellant. You may proceed. Thank you. Good morning and thank you for this opportunity. So I want to address the two pre-trial issues this court is reviewing de novo, but I would like to start with appellant's argument as to why a new trial is required. So at the trial, the plaintiff presented an absolutely staggering amount of evidence of harassment, both sexual and sexual slash racial harassment. And because the actual harassment is largely uncontested, I want to talk about Ford's notice of that harassment. The fact that the disgusting comments and conduct were so commonplace, so pervasive, obviously goes to the issue of notice and whether Ford knew or reasonably should have known about it. So in my brief, I have included dozens of examples of Ms. Johnson providing actual notice to Ford regarding Mr. Rowan's behavior, including her supervisor's responses such as, and I apologize, but Deanna, just do us all a favor, just F him and get it over with. But even putting aside the evidence of actual notice, what Ms. Johnson told who, when, the record contains just a myriad of examples of Ford having constructive notice, none of which require any weighing of credibility. And these facts are not contested. So I would like to cover a few of them again, uncontested facts. Help me. Your opposing counsel says that constructive notice is not an issue for consideration in our case. Why is it an issue in your estimation? I very specifically raised the issue of constructive notice at the district court level in my motion for a new trial. I, I specifically cited the language of the jury instruction, including constructive notice and the known or should have known language. So that issue was definitely preserved. So if, if I could go through some of the uncontested facts that go to the issue of Ford's constructive notice. First of all, just one quick question. Sure. Did you use the express or explicit terminology of constructive notice and say that you were playing constructive notice or did you, or alternatively, are you saying that what you did say constituted pleading constructive notice? I, I, in my motion for a new trial, I cited the actual jury instruction on notice, including construction, constructive notice, and the new Ford newer should have known language. But did you make the argument that there was constructive notice? Oh, absolutely. Yes. Yes. That was in the motion for the new trial. Yes. Yes. Your honor. So for, first of all, for top management, new and discussed in management meetings, cancel. I just, can you point us to that? Because the, the, the instructions do say that. Can you just point us to, or reiterate for us your argument? I know opposing counsel says that your citation leads you back to a case. That's an actual notice case. I asked my question to you is, why does that matter? That it's an actual notice case that it leads you back to. And what is your just strongest explanation for why constructive notices plan and noticed and argued? So constructive notice, you know, throughout this case, constructive notice was an issue. It was always whether the Ford had actual notice or constructive notice in my new trial motion. I made that clear. There were a myriad of instructions given to the jury on notice and constructive notice. And that was a key issue in front of this jury. So in my new trial motion, I covered that. And in fact, I took through some of the examples of constructive notice. So some of the uncontroverted evidence of constructive notice is that Ford knew that Mr. Rowan had pursued sexual relationships with women on the line he supervised. This is the six or seven girlfriend issue. And that is Ford's own terminology. Next, Ford testified, I'm sorry, Mr. Rowan testified that he couldn't remember if Supervisor Mahoney told him to rein in his sexual talk. Next, Mr. Rowan, in the context of sending one of his inappropriate texts to Miss Johnson also texts her, quote, this will probably get me in trouble again. Next, Supervisor Mahoney told Human Resources, he doesn't recall if Johnson showed him the Rowan naked penis picture. Again, Mahoney doesn't recall if Johnson shared this with him, as opposed to Mahoney saying, no, that absolutely never happened. She never showed me any such thing. I had no idea. Also, Supervisor Mahoney at trial didn't deny telling Miss Johnson, you've got to warn me before you show me the weenie picture. Initially, he didn't deny it, said he didn't remember. Next, Mahoney told HR that he viewed Miss Johnson as the problem, but there was no evidence presented at trial of plaintiff ever being a problem, aside from her complaints about Mr. Rowan. Mahoney evidence, does it connect through Markovits? Or are you talking about Harris? To whom was the notice? You just say that Mahoney told Ford. We have the Mahoney and the Markovits. Yeah, they're both her supervisors, and there's notes to both of them. So Mahoney is the first line, Supervisor Markovits is the second one. So the fact that Mahoney and Markovits are repeatedly promising Miss Johnson that they're working on moving her away from Rowan, this is obviously key evidence of notice. Wasn't there also evidence at trial from both Mahoney and Markovits that they didn't know? They claim she did not report it to him directly. So they denied actual knowledge, but constructive notice is a different issue. Concern is, isn't this for the jury to resolve? And then isn't it for the trial judge on the new trial motion to resolve under the new trial test? And then our test is really the abuse of discretion test. Did the district judge abuse his discretion in denying a new trial under the new standard? And so given that the jury heard all of this evidence over 10 days of trial, why is it proper for us to consider overturning that? Well, because your honor, there's a rule that there's a reason that rule 59 exists, and that is the jury doesn't always get it right. And when the evidence is just so completely overwhelming and staggering, and here it is both with respect to the actual harassment, and at a minimum for its constructive knowledge of a harassment, the jury disregarded its duty. And it did not, you know, the jury's finding in this case was like finding that water isn't wet. I mean, it was that staggering and, and, you know, unbelievable. Ford did terminate Rowan. Yes, they did. Shortly after finding out. Well, after According to their story. Right, of course. At what happened, they terminated Rowan. But that was late in the game, months and months after these individuals had at a minimum constructive notice. And by the way, Mr. Mahoney and Mr. Markovic did eventually move Ms. Johnson, they moved her something like half a mile away from Mr. Rowan, the harasser. And they do this three days after meeting with a higher level manager, Ms. Clemmons. And recall Ms. Clemmons had a leadership role at the plant on the sexual harassment task force. And she is the one who gave Ms. Johnson bracelet inscribed with the words, nevertheless, she persisted. When Ms. Johnson initially went to her complaining about the testosterone on the floor, that's uncontested. So more on pervasiveness. Ms. Johnson is the brunt of running jokes at the plant, thanks to Mr. Rowan. And the lie that she has nipple rings for which she gets the nickname nipples. She's also subject to a show me those tits mantra throughout the plant. With another supervisor saying to her. Let me, that is, I would agree. This is just devastating evidence of what was going on at that shop. But the district court denied the motion. And it's the district court that has the ability to act as the 13th juror, right? And has that ability to look at the weight of the evidence and look at credibility. But at the circuit level, we don't have that right to do that. So give me, I know Waldo is your example, but that's a district court case. Give me your best circuit court case for showing that your case at this level should be granted a new trial. Well, I would rely on this. I believe I cited some Sixth Circuit cases in my brief. But, you know, my prime example is Rule 59 itself. As I said, there's a reason that that rule even exists. Jury verdicts are overturned. It's not the norm, but it does happen. And the overriding concern is whether or not the overwhelming web, whether or not this was reasonable. And this was just not reasonable, given the overwhelming evidence of the harassment and the admissions of some of these decision makers, some of these supervisors on the issue of constructive notice. Let me give you just a couple more examples, if I can. Mr. Mahoney does not deny telling Ms. Johnson, you've only been here a hot effing minute. And you're running around here saying shit, telling her, you better watch your mouth. I have a wife and grandchildren to take care of. So this is Mr. Mahoney threatening Ms. Johnson to keep her mouth shut. And he- Was this another, what we heard with some regularity? I don't remember that was his response. He doesn't deny it. He didn't deny it. He didn't, and there was another key bit of testimony that the supervisors had no explanation for it. And that is when, well, there's a couple of them. Mr. Mahoney sent my client a text message just days after the most graphic penis picture was sent to her. And he writes back, think about what you want to do and let me know. I will support you, whatever you, I support whatever you feel you need to do. This is, Mr. Mahoney can't explain any of this on any kind of legitimate basis. Let me ask you a procedural question. We had this case before us previously on appeal. I think it was back in 2021. And at that time, you were appealing the grant of a summer judgment on the racial discrimination or racial harassment claim. Prior to you bringing that appeal, you had filed a motion to amend, to add a retaliation claim, which the district judge denied. So in that appeal that we previously ruled upon, you did not brief or raise the issue, or if you did, you can let me know, of retaliation, the fact that the district judge had denied your motion to amend to add retaliation. Um, if you fail to put that in your brief in the first appeal, we now precluded from considering it the retaliation claim in connection with this appeal based on the law of the case. So this court actually addressed a similar issue in the first appeal and found that there was no waiver. This is a question of law that doesn't require any further factual development. The parties have briefed it. The court does have discretion to review it. And that's the Penny Dock case that this court cited in Johnson 1, the first time this case came through to appeal. All right, you can proceed if that concludes your answer on that. All right. So I also wanted to talk about... Excuse me. You are now in the red on time. So you have saved two minutes for rebuttal. If you wish to save them, fine. And if you wish to use your rebuttal time now, that's your choice. I will save the time. Thank you. Sure. Okay, Mr. Evanson. Thank you, Judge Moore, and may it please the court, Blaine Evanson on behalf of Ford Motor Company. A plaintiff seeks the extraordinary relief of overturning a unanimous jury verdict. But the only evidence she relies on in claiming the verdict was against the great weight of evidence is her own trial testimony. That testimony was supported by almost no documentary evidence, and it contradicted a wealth of other evidence and witness testimony. Well, wasn't there a good bit of evidence of his improprieties in general and their understanding that there were eight or nine girlfriends that he was, frankly, hitting on women that worked on his line? Wasn't that part of the testimony at trial? There was. I think there was one witness, Ms. Clemons, who testified that she had heard that he had had girlfriends on the line. They were unidentified. He's your witness, right? Correct. But there was no testimony whatsoever from Ms. Clemons about any sort of harassment with those women or certainly with Ms. Johnson. And so the testimony about harassment, certainly the testimony related to Ms. Johnson, was contradicted by every other witness who took the stand. What about your opponent just mentioned this text that Mahoney sent saying, think about what you want to do. What about those kinds of things? So Mr. Mahoney was asked on cross because a plaintiff called him in her case. He was asked on cross about that text, and he couldn't remember what it was referring to. On redirect, he was shown his deposition testimony, and his recollection was refreshed. And then he testified that that text was referring to one of the hourly employees that Ms. Johnson was having a hard time with. So there was no testimony whatsoever besides for Ms. Johnson that that text somehow referred to the ongoing harassment. There were lots of text messages were introduced in this case. Not one of them is with anyone else at Ford besides Rowan and Ms. Johnson that said anything about harassment. So the jury in this case was faced with Ms. Johnson's uncorroborated, at times inconsistent testimony, and several other witnesses who contradicted everything that she claimed. And it's important to keep in mind, I think, Judge Strange, your questions were going to this, that she does not, Ms. Johnson does not assert any error in the way that the district judge managed the trial. So she does not raise any sort of error in the jury instructions or claim that evidence was improperly excluded. She just thinks that the jury got it wrong. That is a frontal attack on a unanimous jury verdict, and that was properly instructed. So this is a steep burden in overturning such a result. And the other thing I want to mention is that Ford is not here to defend Nick Rowan. So Judge Strange, your question about the awfulness of what was alleged, we're not here to defend that. What plaintiff claims that Rowan did is intolerable, and Ford did not tolerate it. The day after plaintiff reported what Rowan had done, he was gone, and he never came back to the plant. Ford immediately and thoroughly investigated plaintiff's allegations and terminated Rowan as a result. And so the only claim here is that is plaintiff's allegations, her testimony that, again, was uncorroborated and contradicted every other witness that she had been telling Mahoney and Markovich before she finally went to Ms. Clements. And counsel, I'm having a little trouble here with the argument. Your argument basically is that the claims were uncorroborated and unproven, yet you're also saying that Ford terminated Mr. Rowan as a result of these claims and allegations. Those two things don't quite match up, do they? It's a great question, Judge Clay, and I hope I'm not misspeaking. Plaintiff's testimony about what Rowan was saying, doing to her, is not what we are disputing. We are not here to say that plaintiff and Mr. Rowan, that he didn't do anything to her. What we're here to dispute is that plaintiff ever told anyone else, any of her supervisors, about what was happening. On that, there's no corroboration. And so the company did investigate what plaintiff was alleging and whether the company concluded that it was accurate or mostly accurate or whatever was not really fleshed out in the trial record. But what was crystal clear is that Mahoney, Markovich, Clements, all denied in statement after statement, repeatedly, uniformly, that plaintiff ever raised any of these concerns with them. And so when Ms. Lofbaum says that the evidence of harassment was staggering and overwhelming, she's referring only to Ms. Johnson's testimony. There was not anything else. And so what we have is the jury simply believing these three other witnesses over Ms. Johnson. And that's just not something that district courts are required to overturn in a new trial motion. And again, we are here, I think, Judge Stranch, you were asking about the Waldo case. The Waldo case, this court affirmed a grant of a new trial motion. That was a very different procedural posture than if this court were to reverse the denial of a new trial motion. That is an abuse of discretion standard that this court is reviewing. And in the Waldo case, there was a wealth of evidence supporting not only the harassment, but that the company knew of the harassment and did not act. The company witnesses in Waldo admitted that they both learned of and observed the harassment and did nothing. And so the fact that the district judge in Waldo ordered a new trial does not in any way mean that the district judge here was required to order a new trial. But couldn't there have been constructive notice of the abhorrent behavior of Rowan? I mean, how can someone like Rowan be allowed by a company to operate as a supervisory type of employee? Well, Your Honor, there was no evidence that anyone else at Ford ever observed any of the things that Ms. Johnson claims that Rowan was doing. So she claimed that a lot of this was happening in text messages. She said a lot of this was verbal, but no other witness was ever called to corroborate, to testify that they heard these things. So again, whether Rowan actually said these things to plaintiffs isn't really relevant right now. What is relevant is that no other witness ever testified that they heard or observed Rowan doing these things. And so there's no basis for constructive notice when there's no evidence that anyone noticed it. Well, I'm struggling with that because we've got the guy who is sending pictures of himself to her, and that is clear evidence that he was doing something. And so is your position, well, he was doing something with these messages that we now see, but nothing else? I'm just struggling with how someone... I understand Markovits is not there all day long. He is out at meetings most of the time, but Mahoney is there a lot of the time. And they actually transferred her for a while and then transferred her back. I'm struggling with the argument that that's not constructive notice, which I know you say it's not... Constructive notice is not an issue, but I'm not sure that I'm on board with that argument. Certainly, Your Honor. And I don't want to belabor the waiver argument. The plaintiff's new trial motion cited the constructive notice during instruction, and that is it. It did not make an argument, but I don't want to belabor the waiver argument because the evidence of constructive notice was so lacking. You referenced the horrible picture that Rowan texted Johnson. Again, not defending that in any way, shape or form, but that was a text between Rowan and Johnson. No one else saw that picture. There's no evidence that anyone else, besides plaintiffs say so, there's no evidence that anyone else saw that picture. So there cannot be constructive notice of harassment if no one at the plant ever observed that harassment. Why did Ford transfer her out? To give her more learning opportunities and to expand her training. There's no evidence, again, besides plaintiffs say so, that she was transferred because of problems with Rowan. Plaintiff testified to that, but no one else corroborated it, and they in fact denied it. And on Mahoney, I would just point Your Honors to several pages in the trial transcript. Page ID 4700, 4699, 4639, 4631 to 32. Over and over and over again, Mahoney was asked, did she tell you this? Did she tell you that Rowan was asking for pictures of her breasts? He denied it over and over and over again. And so what we had is Mahoney saying, she never talked to me. Johnson saying, I was raising this with him every day. And the jury, it was credibility of determination. The jury believed Mahoney and Markovich and Clemons over Ms. Johnson. And that's just not something that new trial motions are too upset. Before I run out of time, I want to address Judge Clay's question about the leave to amend ruling. Ms. Lofbaum said today, and she said in her reply brief, that this is the same waiver argument that this court rejected in the previous appeal. And that's just not correct. In the previous appeal, Ford argued that plaintiff had raised, had waived an issue because it raised it for the first time in a motion for reconsideration. And we recognize that that sort of waiver can be excused, that it's within the court's discretion to excuse that when the issue gets briefed, and this court excused the waiver in the first appeal, and that's fine. But the waiver here is an entirely different matter. As Judge Clay's question, you were getting at, plaintiff could have raised the denial of leave to amend in the first appeal. She didn't. As a result, once this court released the mandate in the first appeal, that issue was finally decided, final, not reviewable. Not reviewable by the district court on remand, and not reviewable by this court in a subsequent appeal. And I'd point the court- What about the penny dock argument? That does not go to, that may go to the excuser of waiver in like a new trial of a new reply brief. It does not have anything to do with the mandate rule and the finality that occurs when this court fully and finally adjudicates an appeal. So the Adecita case addressed this exactly the same. There were two appeals in that case, and the defendant in the second appeal tried to raise an issue that he could have, but didn't raise in the first appeal, and this court rejected the attempt. And pages 849 to 850 of the opinion, the law of the case doctrine bars challenges to a decision made at a previous stage of the litigation, which could have been challenged in a prior appeal, but were not. And so, frankly, this issue is, it's not even, I don't like saying this to a court of appeals, but it's not even within the court's jurisdiction to consider because it became final once it was not raised in the first appeal, and this court fully and finally adjudicated that appeal. But if the court disagrees and considers it, we think that the argument was clearly correct. There was no allegation in the complaints connecting Ms. Johnson's firing to any sort of retaliation. The complaint lays out in detail why she was fired, and it's because she didn't come back to work after her disability leave. That's paragraphs 47 to 52 of the proposed amended opinion. It says very clearly, she was cleared to return. She was told if you don't return, you're going to be considered as quitting. She didn't come back to work. And so the fact that she has pleads one line that says her termination was in retaliation for protected activity, that's simply not enough. That is a threadbare legal conclusion. It is classic allegation that this court does not take as true. So even if the court were to consider the challenge, the motion for leave to amend, we think that it was clearly correct and should not be disturbed. Happy to answer any other questions. Ms. Lofgren did not address the quid pro quo harassment claim. I think our brief addresses all the arguments that she's made, but I'm happy to answer any questions that the court has. Certainly her lead argument that a district judge can't grant summary judgment if the judge grants leave to amend over a futility objection, that is just wrong as a matter of law. And I'd point the court to the McKenzie versus Belk at South case that we cited in our brief and the Maple Hill apartment case that we cited. Both those cases directly reject this. When the court grants leave to amend over a futility objection, it is determining that the allegations, if proven true, state a cognizable claim. It is in no way saying that the case gets to go to trial or that it somehow can't be adjudicated at summary judgment. And again, happy to answer any questions the court has, but otherwise we'll rest the remainder of issues in our papers. We ask the court to affirm the judgment. Any further questions? Hearing none. Thank you very much. Time for a rebuttal. Your mic is off. Thank you. As Mr. Evanson argued, no one saw this penis picture, then why is Mr. Mahoney at trial not denying, telling Johnson, you've got to warn me before showing me a weenie picture. I want to quote, simply could amend her complaint to add a quid pro quo claim. The court didn't just say, hey, this survives a 12 v six motion. It's legally sufficient. Go ahead and mend. The court went much further. The court said there were two questions of fact on key issues, both as to whether Mr. Rowan has sufficient supervisory authority over plaintiff and to whether denial of training can support a quid pro quo claim. So that became the law of the case. Fast forward, the court gives forward a second shot at summary judgment. This time completely ignores the law of the case and says, oh, there's no questions of fact for it is entitled to summary judgment on the quid pro quo. I want to go back briefly to my retaliatory termination amendment. What plaintiff's proposed amended complaint actually said was that there was a continuum of negative activity from the time plaintiff filed her complaint in January of 2019 until she was fired in August 2019. Including Ford cutting off her pay, sending her communications to the wrong address, then falsely claiming she had been released to work by her doctor when she hadn't. And finally, firing her. If these facts were not sufficient to allege a causal connection, at a very minimum, the court was required to allow plaintiff to plead it more specifically, not allow, disallow amendment altogether. Um, finally, the Waldo case, the Waldo case. Yes, the, the, uh, the notice was different, but the evidence of constructive notice in this case exists in droves and the harassment was much more pervasive than it was in Waldo. Um, Ms. Waldo was certainly treated very badly, but it was less egregious and much less frequent than in this case. And the Waldo court also made it very clear that credibility issues do not trump assessment of the overwhelming weight of the evidence. That's what the court is, um, required to assess. And in this case, um, the jury's failure to find liability was simply unreasonable. Um, and I'm asking the court to correct the egregious injustice that was done to Ms. Johnson. Thank you. Thank you. Thank you both for your argument and the case will be submitted. Um, and we will ask the clerk to adjourn court. This honorable court is now adjourned.